STATE of Missouri, Respondent,

v.

Michael F. STALLINGS, Appellant.

No. WD 75001.

Missouri Court of Appeals, Western District.

Aug. 27, 2013.

S. Kate Webber, Kansas City, MO, for Appellant.

Jessica Meredith, Jefferson City, MO, for Respondent.

Before Division One: GARY D. WITT, P.J., THOMAS H. NEWTON, and MARK D. PFEIFFER, JJ.

THOMAS H. NEWTON, Judge.

Mr. Michael F. Stallings appeals a conviction of first-degree tampering, entered pursuant to section 569.080.1(2).[1] He claims the conviction should be reversed because the State used his prior convictions as propensity evidence. We reverse and remand.

### Factual and Procedural Background

On November 21, 2010, Mr. Stallings was stopped by a Missouri State Highway Patrol Trooper for driving without a visible license plate. Mr. Stallings was driving a 2001 blue Ford Focus while a Chrysler PT Cruiser and a Chevrolet S10 were behind him driving in a row on the highway. Trooper Brody Sanson approached the Ford Focus from the passenger side. He observed a single key in the ignition on a key ring with a tag resembling a dealer tag, and a pry bar on the front passenger seat. At the time, Mr. Stallings was wearing a black, hooded sweatshirt and a black ski mask rolled up on the top of his head. Upon request, Mr. Stallings produced a Kansas driver's license. He claimed that the Ford Focus belonged to his sister, Carol Stallings, who got it in Cameron, Missouri, and that he did not know if the Ford Focus had paperwork.

As Mr. Stallings exited the vehicle, Trooper Sanson noticed bulges in the front of Mr. Stallings's pants. In Mr. Stallings's pockets were two box knives and a pair of needle-nose pliers. Mr. Stallings sat in the patrol car while Trooper Sanson collected the vehicle identification number

---

1. Statutory references are to RSMo 2000 and the Cumulative Supplement 2010.

(VIN) from the Ford Focus. As he was writing down the number, Trooper Sanson noticed Mr. Stallings's demeanor change from friendly to nervous. Trooper Sanson ran Mr. Stallings's Kansas driver's license and the Ford Focus's VIN through the system. Mr. Stallings's license was valid, and the Ford Focus had not been reported stolen. Trooper Sanson gave Mr. Stallings a verbal warning and allowed him to leave.

The next day, a dealership in Cameron, Missouri reported a break-in and theft of three vehicles from its lot, one of which was the Ford Focus that Mr. Stallings had been driving the previous morning. The other two vehicles were a Chrysler PT Cruiser and a Chevrolet S10. The dealership did not own the vehicles, but had agreed to sell them and split the profit with the owner. Neither the dealership nor the owner had given Mr. Stallings permission to operate the Ford Focus. On December 28, police officers located the Ford Focus, which had been vandalized and abandoned in a nearby tow lot. Mr. Stallings was charged with first-degree tampering for unlawfully operating a vehicle without the owner's consent.

At trial, the above facts were adduced through several witnesses and the videotape of the stop.[2] The State presented testimony from Mr. Stallings's sister, Ms. Carol Bryant (whom Mr. Stallings sometimes referred to as Carol Stallings), indicating that she did not own the Ford Focus and had no dealings with the vehicle or the dealership from which it came. On cross-examination, Ms. Bryant stated that she and a friend, who was driving a brown

Cadillac, dropped Mr. Stallings off on the side of a highway to pick up the Ford Focus for his "play" sister, a woman who was not related to Mr. Stallings but whom he regarded as his sister. Ms. Bryant claimed that they followed the Ford Focus and saw the Highway Patrol stop it.

Mr. Stallings testified and claimed that he believed the car belonged to his "play" sister, Jaquita Mims, and that he did not know that the Ford Focus was stolen. He admitted to having prior felony convictions, involving stealing by deceit, tampering, burglary, possession of burglar's tools, and some unspecified convictions in Kansas. On cross-examination, the State elicited that two of Mr. Stallings's prior convictions involved stealing vehicles from car dealerships and that another prior conviction involved a car rental company. Mr. Stallings objected and argued that the line of questioning sought inadmissible details of the prior crimes. The State argued that the evidence of prior crimes was admissible because it showed a pattern. The trial court overruled the objection, and indicated that the State was allowed "limited inquiry as to the nature of the [prior] conviction[s]," to the extent that the "charges all related to the cars taken from car dealers.... [T]hat's close and similar enough that that can be allowed."

During the instructions conference, the State informed the trial court that, under section 569.080.1(2),[3] the charging statute, the State was required to show that Mr. Stallings knew that he lacked the owner's consent to operate the Ford Focus and that section 569.080.3(1) allowed the use of

---

2. The videotape was not filed as an exhibit with this court. We thus consider the tape as immaterial to the issues on appeal. *See State v. Tanner*, 220 S.W.3d 880, 883 (Mo.App. S.D. 2007).

3. Section 569.080.1(2), states "A person commits the crime of tampering in the first de-

gree if: ... He or she knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle without the consent of the owner thereof."

"evidence of defendant's prior tampering ... to prove the knowledge element" upon a finding by the trial court that the probative value outweighed the prejudicial effect. The State requested that the trial court make such a finding and grant the State permission to argue that Mr. Stallings's prior tampering convictions showed that he knowingly operated the Ford Focus without the owner's consent. Defense counsel opposed the State's request, arguing that such use of the priors was "patently unconstitutional" in that it would "contradict[ ] the universal jury instruction to the effect that evidence of prior bad acts, if admitted, can go only to a fact finder[']s assessment of a defendant's credibility" and that "evidence of commission of prior offenses is not evidence of guilt as to the present charge." The trial court ruled in the State's favor, but cautioned the State not to go "into great evidentiary detail about any of [Mr. Stallings's] other crimes which are not in the case."

A credibility instruction was provided to the jury along with other instructions.[4] During closing arguments, the State argued that Mr. Stallings's prior convictions showed his knowledge that he did not have the owner's consent to operate the vehicle. The State also argued that "[Mr. Stallings has] done it before, he did it again." In response, Mr. Stallings's counsel argued that although Mr. Stallings had committed those crimes, it would be a "stretch" to use that evidence to find that he knew the Ford Focus was stolen.

The jury found Mr. Stallings guilty of first-degree tampering. Thereafter, Mr. Stallings filed a motion for new trial, arguing that section 569.080.3 violated article I,

sections 10, 17, and 18(a) of the Missouri Constitution in that it allowed the use of prior convictions to show "guilty knowledge" of the charged offense. Mr. Stallings also argued that allowing the State, over his objection, to elicit details of his prior convictions violated his rights to due process and a fair trial. The trial court denied the motion and entered the conviction. Mr. Stallings was sentenced to nine years in prison. Mr. Stallings appeals.

## Legal Analysis

In the first point, Mr. Stallings asserts that the trial court erred in allowing the state to argue, pursuant to section 569.080.3(1), that the prior convictions for tampering and burglary showed he knowingly operated a vehicle unlawfully in this case. He argues that section 569.080.3(1) is unconstitutional on its face in that it allows the admission of propensity evidence, and he further argues that he was prejudiced insofar as the State argued that the prior convictions involving dealerships showed Mr. Stallings's knowledge that he unlawfully operated the Ford Focus. Because Mr. Stallings challenges the constitutionality of a Missouri statute, he requests that we transfer the case to the Missouri Supreme Court.

In his second point, Mr. Stallings alternatively argues that the trial court abused its discretion in allowing the State to cross-examine him about the details of the prior crimes involving stealing cars from dealerships because the evidence was adduced for the sole purpose of showing his propensity to steal cars. He further argues that the State's use of those details to argue propensity prejudiced him, there-

---

4. The instruction, patterned after MAI–CR3d 310.10, informed the jury that it could consider evidence of Mr. Stallings's prior convictions "for the sole purpose of deciding the believability of the defendant and the weight to be given his testimony" and that it "must not consider such previous pleas of guilty as any evidence that the defendant is guilty of any offense for which he is now on trial."

by entitling him to a new trial. Because we find the second point to be dispositive, we do not address the first point. *See Winfrey v. State*, 242 S.W.3d 723, 725 n. 2 (Mo. banc 2008) (noting that if a case can be fully determined without reaching the constitutional issue, the court should dispose of the case without addressing the constitutional issue).

Trial courts have broad discretion in allowing cross-examination. *State v. Aye*, 927 S.W.2d 951, 955 (Mo.App. E.D.1996). We will reverse only upon finding a clear abuse of that discretion. *Id.* at 957. An abuse of discretion occurs when the trial court's ruling is "clearly against the logic of the circumstances ... and is so unreasonable and arbitrary that [it] shocks the sense of justice and indicates a lack of careful deliberate consideration." *State v. Dowell*, 25 S.W.3d 594, 602 (Mo.App. W.D. 2000).

During his direct examination, Mr. Stallings admitted having prior felony convictions. Specifically, he stated that he had a stealing by deceit conviction, two tampering convictions, a burglary conviction, a conviction for possession of burglary tools, and "some cases out of Kansas"; he also claimed that the earliest occurrence of these crimes was in the 1980s, that two occurred in 2005 or 2006, and that the last crime was charged in 2008.

On cross-examination, the State established that the stealing by deceit conviction was in 1989 in Clay County and that Mr. Stallings received a four-year sentence. The State asked Mr. Stallings if, in that case, he had told an employee of a dealership that he wanted to test drive a car. Defense counsel objected on the grounds of impermissible details. The State responded:

> Your Honor, in every tampering case he has, including this stealing by deceit, it involves a car dealership. I have case law that states we can ask the who, what, where, when, not the why and the how. There's a case specifically on point in which a man who's targeting female crime victims, and the prosecutor gets up and asks if every victim was female. The court, I believe it's a supreme court, ruled *that that much inquiry is permissible when we're showing a pattern.* I want to ask him in each of these cases, his tampering cases, if these cars were stolen from a car dealership, as they were in this case.

(Emphasis added.)

The trial court overruled the objection and allowed the inquiry. The State then again asked Mr. Stallings if he was charged with telling an employee of the dealership that he wanted to test drive a car, to which Mr. Stallings replied, "No." The State showed Mr. Stallings the charging document connected to the conviction. The trial court interrupted counsel and explained:

> I don't want anybody misled on this; you are allowed limited inquiry as to the nature of the conviction before here. You're not allowed to be getting into any specific evidentiary detail or supporting facts beyond that conviction to the extent that *I thought you said you wanted to introduce evidence that the tampering charges all related to the cars taken from car dealers. I think that's close and similar enough that that can be allowed.*

(Emphasis added.)

The State asked if the 1989 stealing by deceit conviction involved a car taken from a dealership; Mr. Stallings did not remember and deferred to the State's information. The State next established that the burglary conviction, which occurred in January 2005 in Clay County, involved another dealership. The State established that

one of the tampering convictions and the conviction for possession of burglary tools both occurred in July 2005 in St. Charles County. It also adduced that the other tampering conviction occurred in December 2005 in Cass County and involved a rental car company; again, Mr. Stallings deferred to the State's information. Finally, the State adduced that Mr. Stallings had two prior convictions in Kansas for vehicle thefts.

■■■ Evidence of prior convictions may be admitted for purposes other than to show propensity if logically and legally relevant. *State v. Ellison,* 239 S.W.3d 603, 606, 608 (Mo. banc 2007). Other purposes for which the State may admit prior convictions include establishing the defendant's motive, intent, absence of mistake or accident, a common scheme or plan, or identity. *Id.* Logical relevance is evidence that tends to establish a defendant's guilt of the crime for which he is being tried. *Ellison,* 239 S.W.3d at 607. Legal relevance is established where the probative value of the evidence outweighs its prejudicial effect. *Id.; State v. Brown,* 353 S.W.3d 412, 420 (Mo.App. S.D.2011). However, "[a] finding of logical and legal relevance will *never* provide a basis for the admission of prior criminal acts evidence for the purpose of demonstrating a defendant's propensity." *Ellison,* 239 S.W.3d at 607.

■■■ In a first-degree tampering case for operating a vehicle without the owner's consent, the intent element of the crime is shown by proving that the defendant knew he was operating a vehicle without the owner's consent. *State v. Holleran,* 197 S.W.3d 603, 611 (Mo.App. E.D.2006); *State v. McIntyre,* 735 S.W.2d 111, 112 (Mo.App. E.D.1987). Intent is generally shown by adducing facts from which a jury can draw inferences that a defendant knew he lacked consent. *Holleran,* 197 S.W.3d at 611; *see, e.g. State v. Jackson,* 228 S.W.3d 603, 607 (Mo.App. W.D.2007) (finding in a tampering case evidence that the defendant had recently used the vehicle he operated without the owner's consent in an uncharged burglary showed that the defendant knew he lacked such consent); *State v. Flenoid,* 838 S.W.2d 462, 469 (Mo. App. E.D.1992) (finding in drug possession case evidence of prior drug convictions showed that defendant was aware the substance was cocaine and had the requisite knowledge and intent). Intent or absence of mistake or accident must be at issue in the case before either can provide a basis for the admission of a prior conviction. *See State v. Aye,* 927 S.W.2d 951, 955 (Mo.App. E.D.1996); *see also State v. Frezzell,* 251 S.W.3d 380, 386 (Mo.App. E.D.2008) (stating same rule applies to using prior bad acts to show knowledge). Mr. Stallings claimed that he did not know that the Ford Focus he was operating was stolen, so intent or the lack of mistake or accident was at issue in this case.

The statute under which Mr. Stallings was charged, specifically section 569.080.3,[5] allows past acts of tampering, if legally relevant, to be used to establish the intent element of first-degree tampering: knowledge that he operated the vehicle without

5. Section 569.080.3 states:
Upon finding by the court that the probative value outweighs the prejudicial effect, evidence of the following is admissible in any criminal prosecution of a person under section subdivision (2) of subsection 1 of this section to prove the requisite knowledge or belief: (1) That one received, possessed, sold, altered, defaced, destroyed, or operated an automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle unlawfully on a separate occasion; (2) That he or she acquired the automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle for a consideration which he or she knew was far below its reasonable value.

the owner's consent. (We interpret this statutory provision to be consistent with the case law recognizing that evidence of uncharged bad acts may be relevant to show the defendant's state of mind.). The evidence adduced by the State in this case, however, cannot fall under this exception. The State did not elicit details about the other crimes for the purpose of showing Mr. Stallings's knowledge. For example, the State failed to adduce any evidence demonstrating that, in those prior cases, the vehicles stolen from dealerships had the same distinctive key tags, lacked a temporary or permanent license plate, or lacked registration or title documents. If Mr. Stallings's prior offenses had involved such circumstances, his earlier convictions could arguably have defeated his claim of an innocent state of mind. The evidence actually admitted, however, showed that his prior offenses involved car dealerships or rental agencies, which lent itself to an argument based only on a pattern of similar offenses,[6] which is no longer an acceptable use of prior convictions. *See State v. Vorhees*, 248 S.W.3d 585, 590 (Mo. banc 2008) (eliminating the signature modus operandi/corroboration exception to the ban on other crimes evidence).

■ Contrary to the State's assertion, admission of the fact that Mr. Stallings's past crimes involved dealerships did not tend to establish his guilt of the charged tampering offense. The details elicited by the State showed nothing more than a pattern in Mr. Stallings's conduct and prejudiced the minds of the jurors by suggesting that Mr. Stallings was guilty of the tampering charge in this case because the vehicle came from the burglary of a dealership, similar to the facts in his prior cases. This prejudice was compounded by the State's closing argument, in which it asked the jury to consider Mr. Stallings's prior convictions in determining whether Mr. Stallings knew that he lacked the owner's consent to operate the Ford Focus.[7] The jury instruction limiting the consideration of Mr. Stallings's prior convictions to a determination of his credibility did not eliminate this prejudice. *See Sanders*, 634 S.W.2d at 528.

Because the State failed to employ the only legitimate purpose for which the facts underlying Mr. Stallings's prior convictions could have been admitted, the trial court abused its discretion in allowing cross-examination designed to elicit impermissible details about Mr. Stallings's prior convictions. Mr. Stallings's second point is granted.

## Conclusion

We reverse the judgment and remand the case for a new trial because the State's

6. In *State v. Conley*, 873 S.W.2d 233, 236 (Mo. banc 1994), the Missouri Supreme Court explained that evidence of uncharged conduct cannot be used for the purpose of showing a "common scheme or plan theory ... in which the evidence of one crime may be offered to show the defendant's propensity to engage in the crime charged."; *see also State v. Frezzell*, 251 S.W.3d 380, 385 (Mo.App. E.D.2008) ("It is not enough to show that [a d]efendant's prior conduct violations were committed in a fashion similar to the charged offenses.").

7. The State argued in its closing argument:
There's a lot of evidence ... to prove that the defendant knew that he did not have permission to operate this car. First thing is the defendant's own words ... and he said, I steal cars.... The defendant knew what he was doing that day, by his own words, and his own admissions, and his own, his prior, his past has shown that he knew what he was doing.
The State further argued in rebuttal closing: Also, his priors, they're not for arson or embezzlement, they're for tampering. He knows what it's like to drive a car that you don't have consent to drive. He knows what it's like, and he knew in this case, just like in those other cases he pled guilty to.

cross-examination of Mr. Stallings improperly elicited details of Mr. Stallings's prior convictions in order to demonstrate Mr. Stallings's propensity to commit the charged offense.

WITT, P.J., and PFEIFFER, J., concur.

